UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00172-GNS

DERRICK J. MYLES                                                                                PLAINTIFF

v.

GENERAL MOTORS, LLC                                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 4). The motion is ripe for adjudication. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.    STATEMENT OF FACTS

Plaintiff Derrick Myles ("Myles") is African American and was employed by Defendant General Motors ("GM") in its Bowling Green, Kentucky, facility. (Compl. ¶¶ 4, 5, 14, DN 1-1). In March 2018, Myles was placed in supervision of the "care line" within the facility after his predecessor, a Caucasian male, was terminated for threatening another supervisor. (Compl. ¶¶ 6, 8). Myles implemented long work hours, required the team leader to work more than he had previously, addressed production issues, and cut two jobs to comply with the budget. (Compl. ¶¶ 9, 11). At some point, Myles was counseled by some unspecified person not to enter identified product defects into the quality defect tracking system as required. (Compl. ¶ 11). The team leader and other hourly employees became disgruntled after Myles assumed his new duties and changed the care line operations. (Compl. ¶ 10).

In July 2018, the care line was run by all African-American males after Myles interviewed and selected an African-American male named "Lee" as the new supervisor of the care line and another African-American supervisor frequently came to the care line to help Lee learn his new job. (Compl. ¶ 13). During this time, numerous comments were made by various employees about "a black guy needing two black body guards to run quality." (Compl. ¶ 15). The hourly employees were afforded harassment training less than a month later. (Compl. ¶ 16).

In August 2018, Myles informed the union that he had increased the speed on the care line by one car per hour, but only a few days later at a union meeting many complaints were directed by unidentified persons at Myles and his African-American supervisors regarding the changes in the care line. (Compl. ¶¶ 17, 18). The following day, Myles was directed by Lolita Fortenberry ("Fortenberry"), whose position is not described, to meet with her to discuss these complaints. (Compl. ¶ 19). At this meeting, Fortenberry made no mention of the union complaints but instead informed Myles of allegations that he had shared inappropriate images on his cell phone with Lee and the other African-American supervisor. (Compl. ¶ 19). Myles claims these were false accusations levied against him because of his race and recent elevation to a supervisory position. (Compl. ¶ 21). Myles and the two African-American supervisors were immediately suspended with pay while the allegations were investigated. (Compl. ¶¶ 22, 24).

In September 2018, Myles was "interrogated" by Fortenberry regarding his previous method of payment to a contract supervisor. (Compl. ¶ 26). Myles alleges he was terminated a week later with no mention of the accusations related to the inappropriate images on his cell phone. (Compl. ¶ 27).

On November 8, 2018, Myles filed this action in state court, which GM removed to this Court on December 6, 2018. The Complaint asserts two claims: that GM violated the Kentucky

Civil Rights Act ("KCRA") by terminating Myles because of his race; and that Myles was terminated for retaliatory purposes for refusing to participate in behavior that was "illegal, unethical, and/or contrary to the recognized business practices of [GM]." (Compl. ¶¶ 28-29). GM has moved to dismiss both claims pursuant to Fed. R. Civ. P. 12(b)(6)

## II. JURISDICTION

This Court has jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" that is "removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . the citizens of different States." 28 U.S.C. § 1332(a)(1).

## III. STANDARD OR REVIEW

A motion to dismiss for failure to state a claim upon which relief may be granted is a procedural motion that tests the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). A complaint must contain a short and plain statement showing that the pleader is entitled to relief for it to survive a 12(b)(6) motion to dismiss. Fed. R. Civ. P. 8(a)(2). "[The] pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* Legal conclusions can provide a framework for the complaint but will not be given the presumption of truth unless they are supported by factual allegations. *Id.* at 679. "A complaint [does not] suffice if it tenders 'naked assertion[s]' devoid

of 'further factual enhancement.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The Supreme Court's "plausibility" standard for assessing whether a complaint's allegation supports its legal conclusions applies to causation in discrimination claims. *Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 626 (6th Cir. 2013) (citing *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2008)). "A complaint that allows the court to infer only a "mere possibility of misconduct," is insufficient to "show" that the complainant is entitled to relief . . . ." *Sam Han*, 541 F. App'x at 626 (citing *Iqbal*, 556 U.S. at 679).

## IV. DISCUSSION

### A. Discrimination Claim

In moving to dismiss the racial discrimination claim, GM contends that the Complaint is factually insufficient to state a claim for relief under KCRA. (Def.'s Mem. Supp. Mot. Dismiss 1, DN 4-1). Specifically, GM states that the only allegation that can possibly be construed in favor of Myles is that "the false accusations were being levied against the Plaintiff and his supervisors because of the Plaintiff's race and having been elevated to a supervisory position." (Def.'s Mem. Supp. Mot. Dismiss 3). Further, GM states that the Complaint makes clear that Myles was terminated because of the payment method to the contract supervisor, not because of his race, and no reasonable person could infer that he was racially discriminated against. (Def.'s Mem. Supp. Mot. Dismiss 3).

"KCRA's stated purpose [is] to effectuate the policies of federal civil rights laws within the Commonwealth [and] Kentucky courts have always construed violations under the KCRA consistent with federal construction of similar violations under the federal civil rights laws." *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 138 (Ky. 2003). Both the KCRA and Title VII make it unlawful for an employer "to discriminate against any individual with respect to his

compensation, terms conditions, or privileges of employment because of such individual's race . . . ." *Compare* KRS 344.040(1)(a), *with* 42 U.S.C § 2000e-2(a)(1). An employment discrimination case need not contain specific facts establishing a prima facie case of discrimination, instead it must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002).

In *San Ham*, the plaintiff, an Asian American man, was employed as a law professor at the University of Dayton and was subject to a Promotion, Retention, and Tenure ("PRT") Committee process in which the school appointed six faculty members for the primary purpose of overseeing the plaintiff's professional development. *Sam Han*, 541 F. App'x at 625. The plaintiff's work performance was reputable, but nevertheless he received a poor evaluation from the Committee and lost his job based on that evaluation. *Id.* In addition, a white adjunct professor was hired to teach one of his patent law classes. *Id.* The plaintiff filed a complaint alleging that Dayton violated Title VII by terminating his employment because of his race and gender. *Id.* at 624. The court granted Dayton's motion to dismiss, holding that the pleading lacked "sufficient factual matter" necessary to create an inference of discrimination. *Id*. at 626. The court reasoned that although the plaintiff adequately plead that he was a member of a protected class and alleged that his race was the reason for the adverse employment action, it was not required to accept the plaintiff's inferences of racial discrimination, because the plaintiff "alleged no set of facts, beyond . . . bare and conclusory assertions, from which a reasonable person could infer how his race . . . factored into. . . the decisions regarding his employment." *Id.*

Unlike *Sam Han*, a reasonable person could infer from the Complaint that Myles' race was a factor in GM's decision to terminate his employment. Myles is an African-American male

5

who succeeded a Caucasian man as supervisor of the care line. The care line workers allegedly became disgruntled once Myles and two other African-American men began running the care line and made racially motivated comments. GM completely disregards this allegation in its argument that Myles made a "bald assertion" that he was terminated because of his race. This comment is a critical difference between the Complaint here and the complaint in *San Ham* which alleged no set of facts reasonably indicating any racial discrimination.

Because GM employees made it known they placed Myles in the category of the "black guy," one relatively straight forward inference which could be drawn: the care line workers became disgruntled because the "black guy" became their supervisor, GM became aware of the disgruntled employees, and GM terminated the "black guy" to restore order. This would be a termination *because of* race. Therefore, the otherwise conclusory allegation that Myles was subjected to "false accusations levied against him because of his race and recent elevation to a supervisory position" is supported by sufficient factual matter, alleges more than a mere possibility of misconduct, and states a claim of relief that is plausible on its face.

For these reasons, Myles has stated a racial discrimination claim under the KCRA. The Court will deny the motion on this basis.

**B.    Retaliation Claim**

GM also moves to dismiss Myles' retaliation claim arguing that the allegations are factually insufficient to state a claim for retaliation. (Def.'s Mem. Supp. Mot. Dismiss 6-8). In particular, GM contends that the Complaint alleges no facts regarding Myles' refusal to engage in any behavior whatsoever, let alone any behavior that was illegal or unethical. (Def.'s Mem. Supp. Mot. Dismiss 6-7). Under the KCRA, it is unlawful for any person to "retaliate or

6

discriminate in any manner against a person because he has opposed a practice declared unlawful . . . ." KRS 344.280(1).

Myles's retaliation claim is conclusory and fails to state a claim upon which relief may be granted. In particular, he alleged that his termination was "retaliatory in nature, and specifically, for the Plaintiff's refusal to engage in behavior that was illegal, unethical, and or contrary to the recognized business practices of General Motors." (Compl. ¶ 29). This assertion is a mere "the defendant-unlawfully-harmed-me accusation," because the only pleading that can be construed to support this accusation is that, at some point, Myles was counseled by some unnamed person not to enter defects into the defect tracking system and to repair the defects without reporting them. Myles argues that KRS 344.280 should be interpreted broadly, but no matter how broadly it is interpreted, his retaliation claim fails as a matter of law. The Complaint fails to state a claim even taking as true the allegation that Myles was instructed not to enter the defects and assuming such practice would be unlawful, because KRS 344.280 makes it unlawful to retaliate against a person only if they oppose an unlawful practice. The Complaint contains no allegations that Myles ever engaged in, refused, or opposed this suggested practice, or that not tracking defects was illegal. Moreover, there are no allegations that connect his termination to this would-be refusal to act.

For these reasons, Myles has failed to articulate a retaliation claim under the KCRA. The Court will grant the motion in part and dismiss this claim.

## V.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 4) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's retaliation claim

7

under the Kentucky Civil Rights Act is **DISMISSED**. Plaintiff's racial discrimination claim under the Kentucky Civil Rights Act remains.

Greg N. Stivers, Chief Judge
United States District Court

July 29, 2019

cc: counsel of record