UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00172-GNS-HBB

DERRICK J. MYLES                                                                                         PLAINTIFF

v.

GENERAL MOTORS LLC                                                                                 DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 40). The motion is ripe for adjudication. For the reasons stated below, the motion is **GRANTED**.

**I.      STATEMENT OF FACTS AND CLAIMS**

Plaintiff Derrick Myles ("Myles") is an African-American male who was employed by Defendant General Motors ("GM") in its Bowling Green, Kentucky, Corvette plant ("Corvette Plant") from 2009 or 2010 until he was fired in 2018. (Myles Dep. 13:9-15, Mar. 30, 2021, DN 40-5; Fortenberry Decl. ¶ 17, DN 40-4). At the time of his termination, Myles served in a supervisory role as the quality business manager, and he reported to Bryan Palmer ("Palmer"). (Myles Dep. 14:12-18; 15:18-20). In his position, Myles approved the time entries for John Murry ("Murry")[1], a contract employee employed by an outside entity but working at the Corvette Plant. (Myles Dep. 38:11-39:1, 40:16-17).

In 2018, GM received an anonymous complaint that Myles and others were using inappropriate language in the workplace and viewing nude photos on their GM-issued cell phones.

---

[1] In the transcript of Myles' deposition, Murry's last name is spelled "Murray."

1

(Fortenberry Decl. ¶¶ 6-7). While no nude photos were found on Myles' phone, text messages in which Murry informed Myles about being be tardy for work were discovered. (Rosa Decl. ¶ 4, DN 40-2; Fortenberry Decl. ¶¶ 9-10). A comparison of Murry's approved time entries and his text messages reflected that he was paid wages for time he did not actually work. (Rosa Decl. ¶¶ 4-8; Fortenberry Decl. ¶¶ 11-15). As a result of the discovery of Murry's time entry discrepancies, which Myles had approved, Palmer fired Myles. (Palmer Decl. ¶¶ 3-4, DN 40-3).

Myles filed suit in Warren Circuit Court (Kentucky), which was subsequently removed to this Court. (Notice Removal, DN 1). In the Complaint, Myles asserts claims of race discrimination and retaliation in violation of the Kentucky Civil Rights Act ("KCRA"), Chapter 344. (Compl. ¶¶ 28-29, DN 1-1). The Court has previously dismissed Myles' retaliation claim. (Mem. Op. & Order 7, DN 7).

Following discovery, GM moved for summary judgment on the remaining claims of race discrimination. (Def.'s Mot. Summ. J., DN 40). The motion is ripe for decision.

## II.   JURISDICTION

This Court has jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" that is "removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . the citizens of different States . . . ." 28 U.S.C. § 1332(a)(1).

### III. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of showing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

GM moves for summary judgment on Myles' KCRA race discrimination claims. As the Kentucky Supreme Court has noted, to extent that "[t]he [KCRA] is similar to Title VII of the

3

1964 federal Civil Rights Act[,] [it] should be interpreted consistently with federal law." *See Ammerman v. Bd. of Educ. of Nicholas Cty.*, 30 S.W.3d 793, 797-98 (Ky. 2000) (citation omitted).

### A. <u>Disparate Treatment</u>

In its motion, GM argues that it is entitled to summary judgment on Myles' racial discrimination claim premised upon disparate treatment. (Def.'s Mem. Supp. Mot. Summ. J. 8-21, DN 40-1). Because it does not appear that the record contains direct evidence of racial discrimination, Myles must rely on circumstantial evidence to prove his KCRA claim under the *McDonnell Douglas* burden-shifting framework. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)

#### 1. *Prima Facie Case*

To prove a prima facie claim of racial discrimination, Myles must "demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White*, 533 F.3d at 391 (citation omitted). In its motion, GM concedes that Myles can prove a prima facie case of race discrimination under the KCRA. Accordingly, the Court will presume that Myles can make such a showing for the purpose of this motion.

#### 2. *Legitimate, Nondiscriminatory Reason*

Once a plaintiff proves a prima facie case of discrimination, the burden shifts to the employer to present a legitimate, nondiscriminatory reason for the employment decision. *See id.* (citations omitted). As GM notes in its motion, Myles was fired for violating GM's integrity policy, which resulted in significant overpayment of wages paid to Murry due to Myles' failure to verify his work hours. (Def.'s Mem. Supp. Mot. Summ. J. 9-10). In particular, GM has provided

the declarations of Adelle Rosa ("Rosa"), the "People Human Resources Labor Relations Partner" for the Corvette Plant, Lolita Fortenberry ("Fortenberry"), who served as the Human Resources Director at the time of Myles' termination, and Palmer, who made the decision to fire Myles. (Rosa Decl., DN 40-2; Fortenberry Decl., DN 40-4; Palmer Decl., DN 40-3). Acting in response to an anonymous complaint that Myles and others were using inappropriate language and viewing nude images on the GM-issued cell phones, Rosa, Fortenberry, and Lynn Heron investigated the allegations. (Fortenberry Decl. ¶¶ 6-8). While they were not able to substantiate the allegations, the review of Myles' cell phone revealed text messages from Murry, indicating on numerous occasions that he would be late for work. (Rosa Decl. ¶ 4; Fortenberry Decl. ¶¶ 9-10). When the dates of those messages were compared to Murry's time entries, GM discovered that Myles had approved Murry's inaccurate time entries and that Murry had been overpaid for more than $4000 of work he did not perform. (Rosa Decl. ¶¶ 4-8; Rosa Decl. Ex. 1, DN 40-2; Fortenberry Decl. ¶¶ 11-15). Based on that investigation, Rosa and Fortenberry recommended to Palmer that Myles' employment should be terminated for violating GM's integrity policy, which recommendation Palmer accepted. (Fortenberry Decl. ¶¶ 16-17; Palmer Decl. ¶¶ 3-4).

The Sixth Circuit "has repeatedly held that violations of company policies, poor managerial skills, or leadership failures are legitimate, non-discriminatory reasons for disciplining or discharging an employee." *Howley v. Fed. Express Corp.*, 682 F. App'x 439, 446 (6th Cir. 2017) (citing *Idemudia v. J.P. Morgan Chase*, 434 F. App'x 495, 502 (6th Cir. 2011); *Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011); *Bowie v. Advanced Ceramics Corp.*, 72 F. App'x 258, 263 (6th Cir. 2003)). Thus, because GM fired Myles for improperly approving Murry's time entries in violation of company policy, GM has met its burden.

### 3. *Pretext*

Because GM met its burden of establishing a nondiscriminatory basis for its decision, Myles must prove GM's stated reason was not the true reason for his termination, but merely a pretext. *See White*, 533 F.3d at 391-92 (citations omitted). As the Sixth Circuit has explained:

> [There are] three ways in which a plaintiff may rebut a defendant's legitimate, nondiscriminatory reason and demonstrate pretext. The plaintiff may show that (1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action. Regardless of which rebuttal method is employed, the plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that [the defendant's] intentionally discriminated against him." "The jury may not reject an employer's explanation . . . unless there is a sufficient basis *in the evidence* for doing so."

*Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008) (internal citations omitted) (citation omitted).

In its motion, GM notes that Myles cannot prove pretext based on: (i) non-similarly-situated employees; (ii) an anonymous complaint to workplace misconduct involving Myles; (iii) a stray remark; and (iv) Myles' lack of personal knowledge of supervisor comments regarding race and his subjective belief as to the reason for his termination. (Def.'s Mem. Supp. Mot. Summ. J. 10-21). In his response, Myles identifies one statement with racial implications and the discovery of the text messages relating to Murry and his timesheets. (Pl.'s Resp. Def.'s Mot. Summ. J. 7, DN 50).

#### a. **Non-Similarly-Situated Employees**

As GM notes in support of its motion, Myles testified that two persons outside of his protected class—Todd McNelich ("McNelich") and Jim Dunn ("Dunn")—engaged in the same conduct but were not terminated. (Def.'s Mem. Supp. Mot. Summ. J. 11). As the Sixth Circuit has noted:

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated *in all respects*. Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1991) (internal citation omitted) (citations omitted); *see also Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779-80 (6th Cir. 2016) ("Demonstrating pretext using this method 'ordinarily . . . consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.'" (citation omitted)).

As Myles acknowledged in his deposition, he did not have any personal knowledge about the situations involving McNelich and Dunn, and he received this information from Joe Macreno ("Macreno"),[2] who had apparently retired from a position in Human Resources at GM before Myles' termination. (Myles Dep. 83:12-85:14). In evaluating a motion for summary judgment, "the general rule is that 'hearsay evidence cannot be considered . . . .'" *Johnson v. TG Auto. Sealing Ky., LLC*, No. 5:10-CV-01117-R, 2011 WL 6292205, at *5 (Dec. 15, 2011) (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)).

Regardless of any hearsay issue, the record does not reflect that these comparative persons were similarly situated. While the decision to terminate Myles' employment was made by his supervisor, Palmer, Palmer was not involved in making the disciplinary decisions relating to McNelich and Dunn. (Palmer Decl. ¶¶ 4-5). In addition, GM has proffered the declarations of

---

[2] In GM's memorandum and Rosa's declaration, the last name is spelled "Macrino", but it is spelled "Macreno" in Palmer's declaration and in Myles' deposition transcript.

7

Fortenberry and Rosa, both stating that they were unaware of the discipline imposed by Macreno on McNelich and Dunn, or that anyone had received less severe discipline for engaging in the same conduct as Myles. (Rosa Decl. ¶ 9; Palmer Decl. ¶ 5; Fortenberry Decl. ¶ 18). Thus, a comparison with the discipline of McNelich and Dunn is insufficient evidence of pretext to defeat GM's motion.

During his deposition, Myles also referenced the discipline imposed upon John Boustani ("Boustani"), a Caucasian male who reported to Myles. (Myles Dep. 15:1-9, 18:12-19). Boustani was suspended for threatening another supervisor and, according to Myles, Boustani had a thick folder of disciplinary matters. (Myles Dep. 18:24-19:14, 86:10-24). Like Myles, Boustani was terminated for his conduct. (Myles Dep. 86:25-87:2). As GM notes, Boustani is not similarly situated because he was in a different position and was terminated for a pattern of behavior different than Myles' conduct. (Def.'s Mem. Supp. Mot. Summ. J. 15). Thus, Myles cannot rely on GM's termination of Boustani to prove pretext because they were not similarly situated. *See Lattimore v. Wild Flavors, Inc.*, No. 2009-023 (WOB-JGW), 2012 WL 208078, at *14 (E.D. Ky. Jan. 23, 2012) ("Differences in tenure, the types and frequency of their performance problems or misconduct, and other factors render the allegedly different treatment devoid of legal significance."). Furthermore, Boustani was also fired, so that even if he had been similarly situated, there would be no showing that Boustani was treated more favorably than Myles.

### b.     Anonymous Complaint

Myles also may not rely on the anonymous complaint about him in proving pretext. GM received the anonymous complaint that Myles and two other African-American supervisors were using inappropriate language and viewing nude images on their GM-issued cell phones. (Myles Dep. 59:25-60:4; Fortenberry Decl. ¶ 6; Fortenberry Ex. 3, DN 40-4). In investigating that report,

Fortenberry met with Myles, obtained his work cell phone to review, and informed him that he was suspended with pay while the investigation was ongoing. (Myles Dep. 59:25-60:14; Fortenberry Decl. ¶¶ 8-9). The review of Myles' phone did not reveal any inappropriate images. (Fortenberry Decl. ¶ 9). The record does not reflect that Myles was disciplined based on this anonymous complaint.

The review of Myles' work cell phone, however, did lead to the discovery of the text messages from Murry indicating that he was going to be late for work and the discrepancies in Murry's time entries. (Fortenberry Decl. ¶¶ 10-15). Myles served as Murry's supervisor and was responsible for approving Murry's time entries. (Fortenberry Decl. ¶¶ 13-14; Myles Dep. 40:16-17). It was for this misconduct that Myles was ultimately terminated. (Fortenberry Decl. ¶¶ 16-17). To find that the anonymous complaint leading to the discovery of time entry discrepancies was proof of pretext would be mere conjecture and is insufficient to defeat GM's motion. *See Leidner v. Napolitano*, 07-197-DLB, 2010 WL 5300533, at *25 (E.D. Ky. Nov. 23, 2010) (holding that the plaintiff was unable to provide evidence upon which the jury could reasonably reject the employer's reliance on an anonymous complaint in conducting an investigation).

### c. Stray Remark

During his deposition, Myles also testified about hearing stray remarks of a racially discriminatory nature. (Myles Dep. 54:6-57:3). In particular, he stated:

> Q. . . . In Paragraph 15 [of the Complaint], it says, "[c]omments were made by various employees about a black guy needing two black bodyguards to run quality." Can you tell me who made these comments?
> A. Yes. Those were the two—the committee person and the alternate committee person and the committee person that was going to take over for the committee person. They were the committee person. UAW Committee person. GM UAW committee person.
> Q. Do you recall their names?
> A. Oh, God. Again, you are asking me—no, I cannot recall their names. No.
> . . .

9

> Q.   . . . So would the committee person be an hourly employee?
> A.   Yes.· They are elected hourly officials, yes.
> Q.   Got it.
>      And so did you supervise them?
> A.   No.· Our—the committee people that we had worked in the body shop.· They did not work in quality so, no, I did not supervise them.· They worked in a different department.
> Q.   Right.
>      And they did not supervise you?
> A.   No.· They didn't supervise me, no.

(Myles Dep. 54:6-18, 56:6-19).

As the Sixth Circuit has explained, "[u]nless the statements or conduct of non[-]decisionmakers can be imputed to the ultimate decisionmaker, such statements or conduct '"[cannot] suffice to satisfy the plaintiff's burden . . ."' of demonstrating animus.'" *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 724 (6th Cir. 2004) (citation omitted). In addition, "comments made long before the adverse employment action . . . are not probative of disparate treatment." *Shefferly v. Health All. Plan of Mich.*, 94 F. App'x 275, 280 (6th Cir. 2004) (citations omitted). In this instance, Myles has testified that the persons making the inappropriate statements did not supervise him, and he has failed to show how such statements could be imputed to Palmer or the decision to terminate his employment. Accordingly, Myles cannot rely on those statements to prove pretext.

### d.   Lack of Personal Knowledge/Subjective Belief

Finally, GM asserts that Myles cannot rely on his beliefs in proving pretext. (Def.'s Mem. Supp. Mot. Summ. J. 19-21). As Myles testified, he did not recall ever hearing any salaried employees—i.e., supervisors—make any comments about his race or anyone else's race. (Myles Dep. 93:25-94:13). Thus, Myles' subjective belief that he was terminated because of his race and his disagreement with the severity of the punishment imposed by GM are insufficient to prove pretext. *See Smith v. City of Toledo*, 13 F.4th 508, 519 (6th Cir. 2021) ("[W]e have noted that 'rumors, conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to

10

establish a claim of discrimination as a matter of law.'") (citation omitted)); *see also Brown v. Ohio State Univ.*, 616 F. Supp. 2d 740, 758 (S.D. Ohio 2009) ("Much of the plaintiff's purported evidence of disparate treatment is based on her own subjective beliefs and speculation. However, speculation ungrounded in fact is insufficient to establish pretext." (citation omitted); *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 609 (E.D. Pa. 2014) ("An inference of race-based discrimination cannot arise simply from an employee's subjective belief that his or her race somehow influenced the challenged employment action." (citation omitted)).

Myles has failed to produce sufficient evidence of pretext to create a triable issue in this case. Accordingly, the Court will grant summary judgment for GM to the extent that Myles' KCRA claim is based upon disparate treatment.

### B.     Mixed-Motives

In his response to GM's motion, Myles asserts that his racial discrimination claim is a mixed-motive claim under the KCRA.[3] In *Louisville & Jefferson County Metropolitan Sewer District v. Hill*, 607 S.W.3d 549, 556 (Ky. 2020), the Kentucky Supreme Court explained that "Kentucky courts have allowed a version of 'mixed motive' causes of action where the party alleging discrimination makes an initial showing that the discriminatory motive was 'a contributing and essential factor' of the employer's adverse decision." *Id.* at 556.

In opposing GM's motion, Myles points to the "black guy/two bodyguards" comment attributed to the unnamed UAW committee members discussed above. (Pl.'s Resp. Def.'s Mot. Summ. J. 7). Absent a showing that this isolated remark had any connection whatsoever to GM's

---

[3] From the Complaint, it is not apparent that Myles has actually stated a mixed-motive claim. *See Mendez v. Univ. of Ky. Bd. of Trs.*, 357 S.W.3d 534, 540 (Ky. App. 2011) ("[P]laintiffs must give proper notice when bringing mixed-motive claims." (citing *Hashem-Younes v. Danou Enters., Inc.*, 311 F. App'x 777, 779 (6th Cir. 2009))). Nevertheless, GM addresses the merits of Myles' mixed-motive claim in its reply. (Def.'s Reply Mot. Summ. J. 5-6, DN 51).

11

decision to terminate Myles' employment or to any of the decisionmakers, this claim has no merit. *See del Castillo v. Chipotle Mexican Grill, Inc.*, No. 3:16-CV-441, 2018 WL 1411155, at *10 (S.D. Ohio Mar. 21, 2018) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994)); *see also Hallahan v. Courier-J.*, 138 S.W.3d 699, 710 (Ky. App. 2004) ("Direct evidence does not include stray remarks in the workplace, statements by decision-makers unrelated to the decisional process itself, or statements by nondecision-makers." (citation omitted)). Thus, this comment is not sufficient proof of a discriminatory motive.

Myles also references the report of inappropriate images on his work cell phone, and the investigation which failed to substantiate the report. (Pl.'s Resp. Def.'s Mot. Summ. J. 7). He asserts that "[GM] 'investigated' Myles for his approval of John Murray's time sheets without an investigation or question into the entries. However, discovery reveals that Myles' own supervisor, Neal Goodin, would approve time sheets 'without question or investigation.'" (Pl.'s Resp. Def.'s Mot. Summ. J. 7). As discussed above, the review of Myles' phone led to the discovery of the text messages from Murry indicating that Murry would be late to work. (Rosa Decl. ¶ 4; Fortenberry Decl. ¶¶ 9-10). GM discovered that Myles nevertheless approved time entries for time in which Murry was not actually working. (Rosa Decl. ¶¶ 4-8; Rosa Decl. Ex. 1; Fortenberry Decl. ¶¶ 11-15). While Myles clearly disagrees with the reason for his termination, he has not shown that this evidence is sufficient proof to meet his burden to establish a mixed-motive claim.

For these reasons, Myles has failed to establish a triable issue as to his mixed-motives claim. Summary judgment will be granted for GM on this basis.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 40) is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

July 5, 2022

cc: counsel of record